FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 05, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DIANA M.,[1]

               Plaintiff,

    v.

ANDREW M. SAUL, the Commissioner of Social Security,

               Defendant.

No.   4:19-CV-5250-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Diane M. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions, 2) improperly determining that some impairments were not severe, 3) discounting Plaintiff's symptom reports, 4) improperly determining that the impairments did

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 12 & 13.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

not meet or equal a listing, and 5) improperly determining steps four and five based on an incomplete hypothetical. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 12, and grants the Commissioner's Motion for Summary Judgment, ECF No. 13.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.   Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of July 1, 2011.[18] Her claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Glenn Meyers.[20]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Plaintiff's date last insured was September 30, 2011;

- Step one: Plaintiff had not engaged in substantial gainful activity since July 1, 2011, the alleged onset date;

---

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 192-205.

[19] AR 121-27 & 132-43.

[20] AR 35-66.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step two: Plaintiff had the following medically determinable severe impairments: depressive disorder, anxiety disorder, learning disorder, post-traumatic stress disorder (PTSD), and attention deficit disorder (ADD);

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

  > [Plaintiff] is capable of engaging in unskilled, routine tasks in two-hour increments. She can have incidental superficial contact [with the] public. She is capable of working in proximity to but not in coordination with co-workers and can have occasional contact with supervisors. [Plaintiff] will be off task at work up to 10% of the time while still meeting minimum production requirements of the job. She will be absent from work up to 6 unscheduled absences per year.

- Step four: Plaintiff could perform past relevant work as an agricultural produce sorter and line attendant; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as industrial cleaner, kitchen helper, and laundry worker II.[21]

---

[21] AR 17-34.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

When assessing the medical-opinion evidence, the ALJ gave:

- significant weight to John Robinson, Ph.D.'s reviewing opinion and part of Gregory Sawyer, M.D., Ph.D.'s examining opinion; and

- little weight to the remainder of Dr. Sawyer's examining opinion, Phillip Barnard, Ph.D.'s examining opinion, Monica Orellana's opinion, and Maria Castillo, ARNP's treating opinion.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial

---

[22] AR 27-28.

[23] AR 25-26.

[24] AR 1-6.

[25] 42 U.S.C. § 405(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

---

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

### IV.    Analysis

**A.    Step Two (Severe Impairment): Plaintiff fails to establish consequential error.**

Plaintiff contends the ALJ erred at step two by failing to identify her endometriosis, fibromyalgia and other physical impairments, and her borderline intellectual functioning as severe.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[33] To show a severe mental impairment, the claimant must first prove the existence of a mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.[34] If a mental impairment is proven, the ALJ then considers whether the medically determinable impairment is severe or not severe. A medically determinable impairment is not severe if the "medical evidence establishes only a

---

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[33] 20 C.F.R. § 416.920(c).

[34] *Id.* § 416.921 (recognizing the claimant's statement of symptoms alone will not suffice).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[35] Basic mental work abilities include understanding, carrying out, and remembering simple instructions, dealing with changes in a routine work setting, and responding appropriately to supervision, coworkers, and usual work situations.[36]

Step two is "a de minimus screening device [used] to dispose of groundless claims."[37] And "[g]reat care should be exercised in applying the not severe impairment concept."[38]

Here, the ALJ found Plaintiff had the severe impairments of depressive disorder, anxiety disorder, learning disorder, PTSD, and ADD.[39] Yet, the ALJ found that Plaintiff's endometriosis, limitations from methyl tetra hydro folate, low back pain, right shoulder impairment, and obesity were non-severe impairments, and that Plaintiff's fibromyalgia was not a medically determinable impairment. These findings are a reasonable interpretation of the medical record and supported by substantial evidence. Plaintiff's endometriosis was improved with surgery, and imaging indicated that Plaintiff's lumbar spine issue was mild. In addition, the

---

[35] SSR 85-28 at *3.

[36] 20 C.F.R. § 416.921.

[37] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[38] SSR 85-28.

[39] AR 22.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

ALJ reasonably found Plaintiff's diagnosed fibromyalgia was not a medically determinable impairment given that the record did not reflect tender-point testing or repeated manifestations of six or more fibromyalgia symptoms.

While Plaintiff was diagnosed with borderline intellectual functioning, any error by the ALJ in failing to identify this as a severe impairment is harmless. The ALJ found Plaintiff had a severe learning disorder. The RFC already limited Plaintiff to unskilled, routine tasks for which she needed only occasional contact with her supervisors and permitted being off task up to 10 percent of the time so long as she met the job's minimum production requirements.[40] Plaintiff fails to establish what additional work-related functional limitations were to be included in the RFC.

Plaintiff fails to establish consequential step-two error.

**B.    Medical Opinions: Plaintiff fails to establish consequential error.**

Plaintiff challenges the ALJ's weighing of the medical opinions of Dr. Sawyer, Dr. Barnard, and Ms. Castillo. As discussed below, the Court finds Plaintiff fails to establish that the ALJ consequentially erred when weighing the medical opinions.

---

[40] *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

    1.   <u>Standard</u>

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[41] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[42]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[43] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[44] may be

---

[41] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[42] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[43] *Lester*, 81 F.3d at 830.

[44] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 11

rejected for specific and germane reasons supported by substantial evidence.[45] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[46]

### 2. Dr. Sawyer

In March 2015, Dr. Sawyer conducted a psychiatric evaluation.[47] Dr. Sawyer diagnosed Plaintiff with major depressive disorder (moderate, recurrent, and without psychotic features) and psychotic disorder (rule out). He opined that Plaintiff would have difficulty attempting to maintain effective social interactions on a consistent and independent basis with supervisors, coworkers, and the public; attempting to sustain concentration and persist in work-related activity at a reasonable pace; attempting to maintain regular attendance in the workplace; attempting to complete a normal workday or workweek without interruptions; and attempting to deal with the usual stresses encountered in the workplace.

The ALJ gave significant weight to Dr. Sawyer's opinion that Plaintiff could understand, remember, carry out, and remember one or two step instructions; perform simple repetitive tasks; and accept instructions from supervisors, and that

---

assistants within their scope of practice—all other medical providers are "other" medical sources.).

[45] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[46] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[47] AR 768-74.

she would have some difficulty with social interactions.[48] In comparison, the ALJ gave little weight to Dr. Sawyer's opinion that Plaintiff could complete complex and detailed tasks because the evidence, namely Dr. Barnard's testing, revealed that Plaintiff would have difficulty with complex tasks.[49] In addition, the ALJ discounted Dr. Sawyer's opinion that Plaintiff would have difficulty dealing with the usual stresses encountered in the workplace because there was no evidence supporting this finding and such was inconsistent with Plaintiff's ability to manage the stress of raising four children.[50]

Plaintiff argues the ALJ failed to address Dr. Sawyer's findings that Plaintiff would have difficulty sustaining concentration and persisting in work-related activity at a reasonable pace, maintaining regular attendance, and completing a normal workday or workweek without interruptions. Plaintiff also argues that her ability to parent her children does not correlate to a finding that she is able to persist in a work setting. Plaintiff fails to establish consequential error.

First, the ALJ does not consequentially error if he does not discuss all aspects of an opinion so long as the ALJ's overall analysis and findings sufficiently

---

[48] AR 27.

[49] *Id.*

[50] *Id.*

allow the Court to conduct a meaningful review.[51] Here, in regard to Plaintiff's abilities to concentrate and persist, the ALJ gave significant weight to Dr. Robinson's opinion that Plaintiff was able to maintain a schedule and complete a normal workweek, and the ALJ gave little weight to Ms. Castillo's opinion that Plaintiff would miss three days of work per month. The ALJ had conflicting medical opinions as to Plaintiff's abilities to concentrate and persist. Considering the medical evidence and medical opinions, the ALJ's finding that Plaintiff could sustain unskilled, routine tasks for two-hour increments, albeit being off-task up to 10 percent of the time while meeting minimum production requirements, in conjunction with the RFC's social limitations, is a rational finding supported by substantial evidence.

Second, as the ALJ mentioned, Plaintiff cares for her four children, two of whom have physical and/or mental-health challenges. The ALJ reasonably found Plaintiff's ability to care for her four children inconsistent with Dr. Sawyer's opinion that Plaintiff would have difficulty dealing with the usual stresses encountered in the workplace.[52] Unlike Dr. Sawyer, the ALJ reviewed the entire

---

[51] *See, e.g., Molina*, 674 F.3d at 1121 ("[I]f an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, we cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations.").

[52] AR 27.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

record, which included records indicating that Plaintiff was able to handle the stress occasioned by raising children, including attending appointments with them and assisting with school.[53] While home activities and child-care do not necessarily involve skills that are transferable to the work setting,[54] the ALJ reasonably found on this record that Plaintiff's care for her four children required functional abilities that were inconsistent with Dr. Sawyer's opinion that Plaintiff would have difficulty dealing with the usual stresses encountered in the workplace. Moreover, Ms. Castillo opined that Plaintiff had no limitation with the "ability to respond appropriately to changes in the work setting."[55]  On this record, the ALJ rationally partially discounted Dr. Sawyer's opinion.

    3.   <u>Dr. Barnard</u>

      In January 2014, Dr. Barnard conducted psychological testing and a clinical interview for the purpose of assessing whether Plaintiff needed accommodation

---

[53] *See* AR 603 ("Talking helps me see that I am a good mom, and the teacher's[ sic] at my daughter's school think so too. I am always right on it whatever she needs."); AR 548 ("[S]he showed appropriate parenting skills during the session with her child/niece."); AR 599 ("Therapist validates [Plaintiff's] parenting skills and ability to interact with her children in such a manner as to coach them rather than lecture and direct.").

[54] *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

[55] AR 893.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

with her schooling.[56] Dr. Barnard diagnosed Plaintiff with a specific learning disorder (impairments in reading and written expression) and assessed her with borderline intellectual functioning. Dr. Barnard opined that Plaintiff needed to be provided audio materials for text that she was required to read and to be permitted to use a calculator for taking tests involving mathematics.

The ALJ gave little weight to Dr. Barnard's opinion because it related to learning and school—not employment—but the ALJ considered Dr. Barnard's objective findings.[57] An ALJ is not required to provide reasons for rejecting statements within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work.[58]

---

[56] AR 802-06.

[57] AR 27.

[58] *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (recognizing that where a physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"); 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions.").

Here, Dr. Barnard opined that Plaintiff's intellectual and learning disorders required accommodation at school. Plaintiff fails to establish that her past work or the identified gainful work necessitate similar accommodation for audio materials or the use of a calculator.[59] While Plaintiff submits that Dr. Barnard's findings indicate that Plaintiff is unable to concentrate or persist at the workplace, the ALJ reasonably interpreted Dr. Barnard's opinion as not offering functional work limitations.

    4.   <u>Ms. Castillo</u>

Ms. Castillo was Plaintiff's primary care provider. In September 2016, Ms. Castillo, along with therapist Loveroop Bath, opined that Plaintiff was:

- mildly limited in her abilities to remember locations and work-like procedures, understand and remember detailed instructions, sustain an ordinary routine without special supervision, and ask simple questions or request assistance;

- moderately limited in her ability to work in coordination with or proximity to others without being distracted by them;

---

[59] *See* Dictionary of Occupational Titles (DOT) Numbers 381.387-018 (industrial cleaner), 318.687-010 (kitchen helper), and 361.685-018). *See also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (The RFC is defective where it "fails to take into account a claimant's limitations.").

- markedly limited in her abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; interact appropriately with the general public; and set realistic goals or make plans independently of others; and

- severely limited in her ability to carry out detailed instructions.[60]

Ms. Castillo also opined that Plaintiff had mild restrictions with activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence, or pace. She opined that Plaintiff would be off-task 12-20 percent of the work week and that she would miss 3 days of work per month.

The ALJ gave little weight to Ms. Castillo's opinion because it was not supported by the accompanying rationale or her treatment notes.[61] Individual medical opinions are preferred over check-box reports.[62] An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions.[63] However, if treatment notes are consistent with the opinion, a check-

---

[60] AR 391-97.

[61] AR 27.

[62] *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996); *Bray*, 554 F.3d at 1228 (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

[63] *Garrison*, 759 F.3d at 1014 n.17.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

box report may not automatically be rejected.[64] Here, the ALJ's analysis in the paragraph related to Ms. Castillo was barebones. Yet, the ALJ rationally found that Ms. Castillo's marked and severe limitations were not explained by Ms. Castillo's comments contained in the accompanying medical report. The medical report mentioned that Plaintiff had ongoing sadness, a social inability to function in a group environment, crying spells, emotional outbreaks, and chronic fatigue.[65] Why these symptoms resulted in such marked and severe limitations was not explained by the medical report or by treatment notes. Ms. Castillo herself did not author any treatment notes contained in the record. However, as the primary care provider, she received a copy of many of the records. The ALJ discussed some of Plaintiff's therapy and intake notes:

- "[N]otes from [Plaintiff's] therapist documented that [Plaintiff] was cooperative and made good eye contact. She was alert, oriented times three, and had coherent goal directed speech. Her mood was depressed and anxious and her affect was blunted." AR 25-26 (citing AR 377, 388, & 533).

- "At a visit with her therapist, [Plaintiff] reported that she was taking Zoloft as prescribed. She reported having no depression, no racing thoughts, and no anxiety. Her therapist noted that [Plaintiff] was in a happy mood, feeling confident and seemed like she was doing well. [Plaintiff] reported that medication had helped her mood 'a lot.'" AR 26 (citing AR 385, 418, & 450).

---

[64] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014.

[65] AR 896.

- "[Plaintiff] reported that she had been physically and emotionally abused in the past, but feels like she was 'over it.' She denied experiencing any nightmares or flashbacks. She also reported that she 'sometimes felt anxious.' She reported her anxiety came 'out of nowhere' but was rare, happening 'maybe two times a month.'" AR 26 (citing AR 899).

The treatment notes reflect that Plaintiff's mental-health symptoms, particularly her mood, ability to focus, and fatigue, waxed and waned depending on whether Plaintiff took medication and participated in therapy. After considering the conflicting medical evidence, the ALJ reasonably found Ms. Castillo's marked and severe limitations were inconsistent with the treatment notes and not supported by accompanying rationale.[66] These were specific and germane reasons supported by substantial evidence to discount Ms. Castillo's opinion. Moreover, the RFC reasonably incorporated Plaintiff's supported functional limitations by limiting Plaintiff to unskilled, routine tasks with incidental superficial contact with the public, no coordinated work with co-workers, occasional contact with supervisors,

---

[66] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is evaluated as to the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

off-taskness up to 10 percent of the time while meeting minimum production requirements, and up to 6 unscheduled absences per year.[67]

## C.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[68] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[69] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence, non-compliance with

---

[67] AR 25. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[68] *Molina*, 674 F.3d at 1112.

[69] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

medication and improvement with medication, inconsistent statements, and her activities of daily living.[70]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[71] However, objective medical evidence is a relevant factor in considering the severity of the reported symptoms. [72] Here, the ALJ considered

---

[70] AR 25-26.

[71] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[72] *Id.* "Objective medical evidence" means signs, laboratory findings, or both. 20 C.F.R. §§ 404.1502(f), 416.902(k). In turn, "signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

*Id.* §§ 404.1502(g), 416.902(l). Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence. 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

that the objective medical evidence revealed that Plaintiff's symptoms, including difficulties sleeping, concentrating, fatigue, and confusion, waxed and waned—waxing when Plaintiff did not take the prescribed medication. This was a relevant factor for the ALJ to consider.

Second, as mentioned, the ALJ considered Plaintiff's noncompliance with taking her medications and that when she complied her symptoms improved.[73] Both improvement with treatment and noncompliance with medical care are relevant considerations for the ALJ when assessing Plaintiff's reported symptoms.[74] Here, the record mentions Plaintiff stopping medication without first discussing such with her provider.[75] And the ALJ noted that, when Plaintiff was taking Cymbalta and Concerta, Dr. Barnard observed Plaintiff not to be especially

---

[73] AR 26.

[74] *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[75] *See* AR 377 ("Plaintiff has stopped all her medications."); AR 418 (admitting she stopped taking her psychotropic medication); AR 824 (indicating that she stopped taking her medication due to side effects); AR 835 (same); AR 899 (noting that Plaintiff stopped taking medication a year ago when she could no longer afford the medication).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

anxious or depressed.[76] And notwithstanding that Plaintiff was often observed with a depressed and anxious mood or blunted affect, the ALJ highlighted that Plaintiff had largely normal mental status examinations when taking her medication, such as being cooperative, with good eye-contact, orientated, coherent, and with good insight and judgment.[77] That Plaintiff's symptoms waned when she consistently took her medication is a clear and convincing reason, supported by substantial evidence, to discount the reported more limiting symptoms.

Third, the ALJ discounted Plaintiff's mental-health statements because her symptom reports were inconsistent.[78] An ALJ may discount a claimant's symptom reports on the basis inconsistent statements.[79] Here, the ALJ noted that Plaintiff reported that she was "over" her physical and emotional abuse, denied nightmares or flashbacks, that she only sometimes felt anxious, that her anxiety comes out of nowhere but only rarely (maybe two times a month).[80] That Plaintiff offered inconsistent statements about the extent of her symptoms was a clear and

_____

[76] AR 26 (citing AR 803).

[77] *Id.* (citing AR 385, 418, 450, & 460).

[78] AR 26.

[79] *See Smolen*, 80 F.3d at 1284 (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

[80] AR 26 (citing AR 899).

convincing reason, supported by substantial evidence, to discount the more limiting reported symptoms.

Finally, the ALJ discounted Plaintiff's symptom reports because they were inconsistent with her activities of daily living."[81] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[82] Here, the ALJ highlighted that Plaintiff had no problems with personal care, shopped for groceries, prepared simple meals, cleaned, vacuumed, mopped, washed dishes, did laundry, cared for her four children (ages 13, 11, 5, and 6 months), and attended school in an effort to obtain her GED.[83] While a different interpretation could be made as to whether these activities are consistent with Plaintiff being able to sustain fulltime work, the ALJ articulated several other supported grounds for discounting Plaintiff's reported symptoms.[84] Plaintiff fails to establish the ALJ erred by discounting her symptom reports.

---

[81] AR 26.

[82] *Molina*, 674 F.3d at 1113.

[83] AR 26 (citing AR 240-42 & 770).

[84] *Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1163 (9th Cir. 2009).

1

2

**D. Step Three (Listings): Plaintiff fails to establish error.**

Plaintiff contends the ALJ erred by failing to develop the record or to find that Plaintiff's impairments did not meet or medically equal a listing. Plaintiff argues the record reflects mental fog and disorientation, episodes of widespread musculoskeletal pain, tiredness and fatigue, headaches, and borderline intellectual functioning—symptoms the ALJ failed to consider at step-three—and that the ALJ failed to order adequate psychological and physical testing.

Plaintiff fails to establish step-three error. The ALJ's listings findings must be read in conjunction with the entire ALJ decision.[85] Here, the ALJ discussed the medical records and medical opinions related to Plaintiff's impairments. The ALJ reasonably found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listing. This record did not necessitate further development by the ALJ.

**E. Steps Four and Five: Plaintiff fails to establish error.**

Plaintiff argues the ALJ erred at steps four and five because the vocational expert's testimony was based on an incomplete hypothetical that failed to include the opined off-task time, absenteeism, and need for a flexible schedule with additional breaks. Plaintiff's argument is based entirely on her initial arguments that the ALJ erred in considering the medical evidence (objective and opinions) and Plaintiff's symptom reports. For the above-explained reasons, the ALJ's

---

[85] SSR 17-2p.

consideration of the medical evidence and Plaintiff's symptom reports were legally sufficient and supported by substantial evidence. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing past work and other work existing in the national economy.[86]

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 5th day of October 2020.

s/Edward F. Shea

EDWARD F. SHEA
Senior United States District Judge

---

[86] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).